# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF WASHINGTON
# SEATTLE DIVISION

| | |
|---|---|
| DEBBIE BEACH, DAVIDE PACIOCCO, KAYLA BROWNE, JENNIFER CLAYTON, CARMEN PERAMAS, and GAIL SMITH, individually and on behalf of all others similarly situated, <br><br> *Plaintiffs*, <br><br> v. <br><br> FRED HUTCHINSON CANCER CENTER, UNIVERSITY OF WASHINGTON SCHOOL OF MEDICINE, UW MEDICAL CENTER, HARBORVIEW MEDICAL CENTER, VALLEY MEDICAL CENTER, UW PHYSICIANS, UW NEIGHBORHOOD CLINICS (d/b/a UW MEDICINE PRIMARY CARE), AIRLIFT NORTHWEST, and CHILDREN'S UNIVERSITY MEDICAL GROUP, <br><br> *Defendants*. | Case No. <br><br> **DEFENDANT'S NOTICE OF REMOVAL** <br><br> Action Filed: December 12, 2023 <br> Complaint Served: December 18, 2023 |

**TO THE CLERK OF THE ABOVE-ENTITLED COURT:**

**PLEASE TAKE NOTICE** that pursuant to 28 U.S.C. §§ 1332(d), 1441, 1446, and 1453, Defendant Fred Hutchinson Cancer Center ("Defendant" or "Fred Hutch"), hereby removes the action filed by Plaintiffs Debbie Beach, Davide Paciocco, Kayla Browne, Jennifer Clayton, Carmen Peramas, and Gail Smith ("Plaintiffs"), individually and on behalf of all others similarly situated, in the Superior Court of Washington for King County, Case No. 23-2-24597-1, to the United States

District Court for the Western District of Washington, Seattle Division. In support of removal, Fred Hutch states as follows:

### I. BACKGROUND

1. On December 12, 2023, Plaintiffs, individually and on behalf all others similarly situated, filed a Class Action Complaint (the "Complaint") against defendants, including Fred Hutch, in the Superior Court of Washington for King County, Case No. 23-2-24597-1 (the "State Court Action"). Plaintiffs filed the Complaint as a putative class action.

2. Plaintiffs allege that cybercriminals "infiltrated[d] Defendants' computer systems and st[ole] Plaintiffs' and Class Members' highly sensitive personal information." (Compl. ¶ 1.) More specifically, Plaintiffs alleged that on November 19, 2023, Defendant "detected unauthorized activity on [its] clinical network and learned that cybercriminals were able to access Defendants' computer systems ('Data Breach') and, on information and belief, were able to exfiltrate current and former patient's personally identifiable information ('PII') and protected health information ('PHI')." (*Id.* ¶ 3; *see also id.* ¶¶ 35, 37.) Plaintiffs allege that they and the Class members "are likely to suffer economic loss and other actual harm for which they are entitled to damages." (*Id.* ¶ 57.)

3. Based on these allegations, Plaintiffs assert nine causes of action against Fred Hutch: (1) negligence; (2) negligence per se; (3) breach of implied contract; (4) invasion of privacy; (5) unjust enrichment; (6) violation of the Washington Consumer Protection Act, RCW 19.86; (7) violation of the Washington Data Breach Disclosure Law, RCW 19.255.005, *et seq.*; and (8) violation of the Washington Uniform Health Care Information Act, RCW 70.02.005, *et seq.* (*See generally*, Compl.)

4. Plaintiffs purport to bring these eight causes of action on behalf of themselves and a class defined as "All individuals residing in Washington whose personal information was compromised in the Data Breach disclosed by Defendants that occurred in or around November 2023." (*Id.* ¶ 78.)

## II. REMOVAL IS TIMELY

5. Plaintiffs filed this lawsuit on December 12, 2023, and served Fred Hutch with a copy of the summons and Complaint on December 18, 2023. Pursuant to 28 U.S.C. § 1446(a), true and correct copies of documents received in the State Court Action by Fred Hutch are attached hereto as exhibits. Specifically, attached to this Notice of Removal are true and correct copies of: (1) the operative Complaint (**Exhibit A**); (2) Order Setting Case Schedule (**Exhibit B**); (3) Case Information Cover Sheet(**Exhibit C**); (4) Summons (**Exhibit D**); (5) Affidavits of Service upon Fred Hutchinson Cancer Center (**Exhibits E - F**); and (7) the docket in the State Court Action (**Exhibit G**).

6. No other pleadings or substantive filings (i.e., answers, state court orders terminating or dismissing parties, responses, etc.) have been filed in the State Court Action.

7. This removal is timely because Fred Hutch filed this removal within 30 days of being served with the Complaint. *See* 28 U.S.C. § 1446(b) (notice of removal shall be filed within 30 days of service); *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 348 (1999) (time period for removal begins when the defendant is served).

## III. THIS COURT HAS ORIGINAL JURISDICTION UNDER THE CLASS ACTION FAIRNESS ACT

8. This Court has original jurisdiction over this action under 28 U.S.C. § 1332. This Court is in the judicial district and division embracing the place where the State Court Action was brought and is pending. Thus, this Court is the proper district court to which this case should be removed. 28 U.S.C. §§ 1441(a), 1446(a).

9. Removal is proper under the Class Action Fairness Act of 2005 ("CAFA") (codified in pertinent part at 28 U.S.C. § 1332(d)). Section 1332(d) provides that a district court shall have original jurisdiction over a class action with one hundred (100) or more putative class members in which the matter in controversy, in the aggregate, exceeds the sum or value of $5,000,000, and any member of the putative class is a citizen of a different state than the state of citizenship of the defendant. *See* 28 U.S.C. § 1332(d).

4870-1973-5706.2

10.     As set forth below, pursuant to 28 U.S.C. § 1332(d) and § 1441(a), Fred Hutch may remove the State Court Action to federal court under CAFA because this case is (i) pled as a putative class action, (ii) with over 100 proposed putative class members, (iii) that involves a minimal diversity of citizenship among the parties, and (iv) the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs. 28 U.S.C. § 1332(d).

**A.  The Complaint is pled as a putative class action.**

11.     CAFA defines a "class action" as "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. § 1332(d)(1)(B).

12.     Plaintiffs seek class certification under Washington Superior Court Civil Rule 23. (*See* Compl. ¶ 78; Prayer for Relief.) Thus, the CAFA requirement that the Complaint is pled as a class action is satisfied. *See* 28 U.S.C. § 1332(d)(1)(B).

**B.  Plaintiffs allege a putative class with over 100 proposed members.**

13.     Plaintiffs allege that they have been receiving emails from the cybercriminals that allegedly perpetrated the Data Breach "claiming names, Social Security numbers, medical history and other data of more than 800,000 patients has been compromised." (Compl. ¶ 40.) Plaintiffs further allege that "the putative class is well over one thousand members." (*Id.* ¶ 43.)

14.     Accordingly, the number of putative class members exceeds the statutorily required minimum of 100 individuals.

**C.  Minimal diversity of citizenship exists.**

15.     Under CAFA, federal courts may exercise jurisdiction over a class action if any class member is a citizen of a different state from any defendant. 28 U.S.C. § 1332(d)(2)(A).

16.     <u>Defendant's Citizenship</u>. Pursuant to 28 U.S.C. § 1332(c), "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." *See also Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010) (concluding that a corporation's "principal place of business" is "where a corporation's officers direct, control, and coordinate the corporation's activities," or where it has its "nerve center."). "[I]n

4870-1973-5706.2

practice it should normally be the place where the corporation maintains its headquarters[.]" *Id.* at 93.

17.     As alleged in the Complaint, Fred Hutch has its principal place of business in Washington. (Compl. ¶ 14.) Thus, Fred Hutch is a citizen of Washington.

18.     <u>Plaintiffs' Citizenship</u>. For diversity purposes, a person is a "citizen" of the state in which he or she is domiciled. *See Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001). "A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return." *Id.* "A person residing in a given state is not necessarily domiciled there, and thus is not necessarily a citizen of that state." *Id. See also Weible v. United States*, 244 F.2d 158, 163 (9th Cir. 1957) ("Residence is physical, whereas domicile is generally a compound of physical presence plus an intention to make a certain definite place one's permanent abode"). "The courts have held that the determination of an individual's domicile involves a number of factors (no single factor controlling), including: current residence, voting registration and voting practices, location of personal and real property, location of brokerage and bank accounts, location of spouse and family, membership in unions and other organizations, place of employment or business, driver's license and automobile registration, and payment of taxes." *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986).

19.     Here, Plaintiffs allege that they are residents, not citizens, of Washington. (Compl. ¶¶ 8-13.) Because domicile, rather than residency, determines citizenship of individuals, it is unclear whether any of the named Plaintiffs are citizens of Washington or another state. Nevertheless, even assuming named Plaintiffs are citizens of Washington, minimal diversity is still met through the putative class's citizenship, as explained in more detail below.

20.     <u>The Putative Class's Citizenship.</u> Plaintiffs seek to represent the following class of persons: "All individuals residing in Washington whose personal information was compromised in the Data Breach disclosed by Defendants that occurred in or around November 2023." (*Id.* ¶ 78.) Plaintiff's class definition suffers the same deficiency as named Plaintiffs' citizenship analysis—residency does not equal citizenship. A person is a "citizen" of the state in which he or she is domiciled. *See Kanter*, 265 F.3d at 857. "Residence is physical, whereas domicile is generally a

compound of physical presence plus an intention to make a certain definite place one's permanent abode." *Weible*, 244 F.2d at 163.

21. Fred Hutch has sent notifications of the Data Incident—a process which is not yet complete—to people with addresses in all 50 states, the District of Columbia, and internationally.

22. Moreover, the data at issue includes addresses for individuals treated at Fred Hutch as well as those treated at other facilities that Fred Hutch has relationships with throughout the country. Without speaking to each Washington resident within Plaintiffs' class definition, there is no way to identify whether each Washington resident is a citizen of Washington or of another state.

23. Given the size of the putative class and the categories of people it includes (which would include many individuals temporarily residing in Washington, such as college students and individuals temporarily residing in Washington for work purposes), many Washington residents within the putative class are more likely than not citizens of other states.

24. Fred Hutch is notifying all individuals who Fred Hutch has in its systems of the incident—regardless of their last date of treatment or when Fred Hutch obtained their addresses.

25. Even as to patients who provided Washington addresses to Fred Hutch for their treatment, Fred Hutch has been treating cancer patients for many years, and a great many patients who provided Washington addresses likely are not, or are no longer, citizens of Washington State.

26. Many patients likely have moved and not notified Fred Hutch of their change of address or updated their address in a national database.

27. Fred Hutch also does not verify the addresses it receives from its patients (e.g., by confirming with a piece of mail or driver's license), nor does it verify the addresses of persons who were treated at institutions with which Fred Hutch has a relationship (e.g., those persons whose information was sent to Fred Hutch to perform laboratory testing) from all over the country.

28. Fred Hutch provides cutting edge cancer and infectious disease treatment, and people routinely travel from out of state to Fred Hutch to obtain services while staying locally—and thus using a Washington address—for the length of the treatment.

29. Moreover, Fred Hutch's Financial Assistance Program offers reduced cost or free care to Washington residents. To receive financial assistance, an individual presenting for treatment

must have a Washington address. Given this requirement, many out-of-state citizens who seek charity care from Fred Hutch likely use in-state addresses at which they do not intend to remain.

30. Finally, there are likely deceased individuals whose information Fred Hutch has on its systems. A "dead person's prior citizenship is irrelevant when determining whether the controversy 'is between . . . citizens of different States.'" *LN Mgmt., LLC v. JPMorgan Chase Bank, N.A.*, 957 F.3d 943, 955 (9th Cir. 2020) (quoting 28 U.S.C. § 1332(a)). It is impossible to know precisely how many deceased persons are included in the putative class without an individual inquiry.

31. Because Fred Hutch and at least one member of the putative class are citizens of different states, CAFA's minimal diversity requirement is met in this case. *See* 28 U.S.C. § 1332(d)(2)(A).

32. <u>No CAFA Exceptions Apply</u>[1]. Plaintiffs may argue removal is improper because of either or both of two related CAFA exceptions: (1) the local controversy exception or (2) the home state exception (sometimes called the "home state controversy exception"). Neither exception applies here.

33. "Congress provided exceptions to CAFA jurisdiction [] to allow truly *intrastate* class actions to be heard in state court." *Adams v. West Marine Prods., Inc.*, 958 F.3d 1216, 1220 (9th Cir. 2020) (emphasis in original).

34. The party objecting to removal bears the burden of showing that a CAFA exception applies. *See Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1024 (9th Cir. 2007) ("Consistent with the plain language of the state and this well-established rule, we conclude that although the removing party bears the initial burden of establishing federal jurisdictions under § 1332(d)(2), once federal jurisdiction has been established under that provision, the objecting party bears the burden of proof as to the applicability of any express statutory exception under §§ 1332(d)(4)(A) and (B).").

---

[1] Defendant only briefly addresses the mandatory exceptions to CAFA jurisdiction, and reserves all rights to raise additional or other arguments regarding any CAFA exceptions.

4870-1973-5706.2

35. Under the "home state" exception to CAFA, "the district court 'shall' decline to exercise jurisdiction where 'two-thirds of more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed.'" *Id.* (*citing* 28 U.S.C. § 1332(d)(4)(B)). Similarly, the "local controversy exception" requires a district court to decline to exercise jurisdiction when three requirements are met: (1) greater than two-thirds of the proposed plaintiff class are citizens of the state of filing; (2) at least one 'significant defendant' is a citizen of the state of filing; and (3) the principal injuries were incurred in the state of filing. 28 U.S.C. § 1332(d)(4)(A)(i). The "local controversy exception" also has the added requirement that "during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other person." 28 U.S.C. § 1332(d)(4)(A)(ii). "For either exception to apply, the party seeking remand must show at a minimum, and by a preponderance of the evidence, that at least two-thirds of the class are [Washington] citizens and that a defendant is a [Washington] citizen." *Amezcua v. CRST Expedited Inc.*, 653 F. Supp. 3d 712, 718 (N.D. Cal 2023). *See also Mondragon v. Capital One Auto Fin.*, 736 F.3d 880, 883 (9th Cir. 2013) (Plaintiffs "must [ ] establish that greater than two-thirds of prospective class members were citizens of [Washington] as of the date the case became removable").

36. Here, the CAFA exceptions do not apply.

37. First, the local controversy exception does not apply because it is not true that "no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other person" in the prior 3-year period. To the contrary, at least three class actions stemming from the same Data Incident and asserting the same or similar causes of action and seeking to represent a nationwide class, one with a Washington subclass, were filed in this District or in the same state court before Plaintiffs' Complaint was filed. *See Arneson v. Fred Hutchinson Cancer Center*, filed on December 8, 2023 under Case No. 23-2-24266-1 (Superior Ct., King County); *Doe v. Fred Hutchinson, et al.*, filed on December 10, 2023 under Case No. 2:23-cv-01893 (W.D. Wa.); *Irvine v. Fred Hutchinson Cancer Center, et al.*, filed on December 11, 2023 under Case No. 23-2-24438-9 (Superior Ct., King County).

4870-1973-5706.2

38. Altogether, as of the date of this filing, ten class actions have been filed stemming from the Data Incident, including several that are already in federal court. *See id.*; *see also Reed v. Fred Hutchinson Cancer Center*, filed on December 13, 2023 under Case No. 23-2-24737-0 (Superior Ct., King County); *Ayers v. Fred Hutchinson Cancer Center*, filed on December 14, 2023 under Case No. 2:23-cv-01916 (W.D. Wa.); *Aleshire v. Fred Hutchinson Cancer Center*, filed on December 14, 2023 under Case No. 23-2-24742,6 (Superior Ct., King County); *Hunter v. Fred Hutchinson Cancer Center*, filed on December 26, 2023 under Case No. 2:23-cv-01988 (W.D. Wa.); *Holz v. Fred Hutchinson Cancer Center*, filed on December 28, 2023 under Case No. 2:23-cv-01998 (W.D. Wa.); and *Ristvet v. Fred Hutchinson Cancer Center*, filed on January 5, 2024 under Case No. 2:24-cv-00019 (W.D. Wa.).

39. In fact, effectively conceding that matters related to the Data Incident are nationwide in scope and should be in federal court, many of plaintiffs' counsel that filed initial actions in state court have now filed federal lawsuits alleging jurisdiction under CAFA. On December 29, 2023, plaintiffs' counsel in the four pending federal lawsuits sought consolidation of the those cases and the appointment of interim class counsel to lead the consolidated action. *See Doe v. Fred Hutchinson Cancer Center, et al.*, 2:23-cv-01893-MLP, Dkt. # 5, *Unopposed Joint Motion to Consolidate Related Cases*.

40. The CAFA exceptions are inapplicable under these circumstances. *See Beasley v. Lucky Stores, Inc.*, 379 F. Supp. 3d 1039, 1043 (N.D. Cal. 2019) *citing* S. REP. NO. 109-14, at 40-41 (2005) (explaining that "if the defendants engaged in conduct that could be alleged to have injured consumers throughout the country or broadly throughout several states, the case would not qualify for [the local controversy] exception, even if it were brought only as a single-state class action

41. Second, Plaintiffs may not rely on proposed class members' last-known addresses to determine state citizenship, and would not be able to determine their state citizenship without speaking directly to each of them. *See Mondragon*, 736 F.3d at 884 ("That [someone] may have a residential address in [a state] does not mean that person is a citizen of [that state]."); *Kanter*, 265

F.3d at 857 (explaining domicile requires residence plus intent); *Lew*, 797 F.2d at 750 (listing a number of factors, none of which are dispositive, to determine a person's domicile).

42. Based on the composition of the putative class, Plaintiffs cannot meet their burden to prove that more than two-thirds of the putative class are domiciled in Washington. As explained above, it is more likely than not that many of the individuals with a Washington address in Fred Hutch's systems are not domiciled in Washington, and are thus not Washington citizens.

43. In these circumstances, Plaintiffs would not be able to meet their burden of proving that more than two-thirds of the putative class are Washington citizens.

44.   43.   For example, the District of Arizona recently held that remand was improper in a similar case against a medical center that was the target of a cyberattack and data breach because the plaintiffs could not meet their burden of showing that two-thirds of the proposed class—people who were treated at the medical center—were residents of the state in which the case was brought, and that "last known mailing address is *not enough* to establish domicile for exception purposes." *Johnson v. Yuma Regional Med. Ctr.*, 2:22-cv-01061-SMB, 2023 U.S. Dist. LEXIS 181993 (D. Ariz. 2023), Dkt. # 65, pg. 4 (emphasis added); *see also, e.g.*, *id.*, 2023 U.S. Dist. LEXIS 9117, Dkt. # 47, (denying motion to remand under CAFA exception because plaintiffs, who had the burden of proof, failed to provide evidence to demonstrate that more than two-thirds of the putative class members were Arizona citizens, despite the fact that most putative class members had Arizona addresses). Plaintiffs' appeal to the Ninth Circuit was denied. *Id.*, Dkt. # 67, Order (Ninth Circuit's denial of appeal regarding remand under CAFA exception).

45. It would also frustrate the purposes of CAFA, waste judicial resources, and cause unnecessary expense to Fred Hutch to force it to litigate the same claims in two different forums: in state court and in federal court. Where the federal court has already secured CAFA jurisdiction over a nationwide putative class, courts have rejected attempts by plaintiffs to strategically limit their classes to a single state's residents to avoid CAFA jurisdiction. *See, e.g.*, *Simon v. Marriott Int'l, Inc.*, No. PWG-19-1792, 2019 WL 4573415, at *2 (D. Md. Sep. 20, 2019) (denying remand where "federal jurisdiction already attached to two CAFA class actions" previously filed, while noting that CAFA does not permit plaintiffs to "splinter[] . . . a single lawsuit into multiple suits"

or avoid federal jurisdiction through strategic pleading); *Sanders v. Kia Am. Inc.*, 2023 WL 3974966, at *4 (C.D. Cal. June 13, 2023) (denying remand because plaintiffs "could not force litigation on the same claims in both state and federal court by divesting federal court of jurisdiction it had already acquired").

46. In short, "minimal diversity" is established pursuant to CAFA because at least one putative class member is a citizen of a state other than Washington, no evidence exists to suggest any of the exceptions to CAFA apply, and it would be unfair and inefficient to force Fred Hutch to litigate the same claims in two different forums.

**D. The amount in controversy exceeds the CAFA threshold[2]**

47. The final requirement for CAFA jurisdiction—that the amount in controversy exceeds $5 million—is also met in this case. *See* 28 U.S.C. § 1332(d)(2).

48. "[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014) (quoting S. REP. NO. 109-14, at 43 (2005)) "Evidence establishing the amount is required by § 1446(c)(2)(B) only when the plaintiff contests, or the court questions, the defendant's allegation." *Dart Cherokee*, 574 U.S. at 89; *see also* 28 U.S.C. § 1446(c)(2)(B).

49. Courts may consider the combined total amount of alleged actual damages and punitive damages. *Bell v. Preferred Life Assur. Soc. of Montgomery, Ala.*, 320 U.S. 238, 240 (1943) ("Where both actual and punitive damages are recoverable under a complaint each must be considered to the extent claimed in determining jurisdictional amount."). The amount in controversy also includes reasonable attorney's fees, if mandated or allowed by statute or contract. *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 700 (9th Cir. 2007) ("Section 1332(a)'s amount-in-controversy requirement excludes only 'interest and costs' and therefore includes attorneys' fees."). Finally, the costs of complying with an injunction may establish the amount in controversy.

---

[2] The amounts set forth in this Notice of Removal are solely for purposes of establishing that the amount in controversy exceeds the $5,000,000 threshold and are not intended and cannot be construed as an admission that Plaintiffs can state a claim or are entitled to damages in any amount. Defendant denies liability, denies Plaintiffs are entitled to recover any amount, and denies that a class can be properly certified in this matter.

11

*See Morales v. Generix Labs, Inc.*, 2010 WL 11595740, at *3 (C.D. Cal. April 19, 2010) *citing In re Ford Motor Co./Citibank (S.D.), N.A.*, 264 F.3d 952, 958 (9th Cir. 2001) ("When a plaintiff seeks injunctive relief the amount in controversy may be calculated by assessing the cost to the defendant of complying with the injunction.").

50. Plaintiffs request the following relief, which, aggregated across the putative class of 800,000 individuals, places more than $5 million in controversy, exclusive of interests and costs: "Plaintiffs, individually and on behalf of Class Members," seek "monetary relief, including actual damages and penalties,", seventeen enumerated forms of "injunctive and other equitable relief," "a lifetime of credit monitoring services for Plaintiffs and Class Members,", "damages, including actual, nominal, statutory, consequential, and punitive damages,", and attorneys' fees (Compl., Prayer for Relief).

51. Based on plaintiffs' allegations related to damages and the size of the putative class, these alleged damages easily surpass the $5 million jurisdictional threshold.

52. For example, just the "credit monitoring services" requested by Plaintiffs in their prayer for relief alone would cost many millions of dollars and easily satisfy the jurisdictional threshold. The three identity-protection agencies—Equifax, LifeLock, and Experian—advertise monthly rates for credit-monitoring services ranging from $9.95 to $24.99.[3] The cost of providing <u>one month</u> of credit-monitoring services at $9.95 per month (the cheapest credit-monitoring service) for 800,000 individuals is nearly $10 million. And this does not include damages for the other alleged "time and effort" that each putative class member is alleged to have spent. Even one hour per putative class member at the federal minimum wage exceeds $5 million.

53. Moreover, several putative class actions have been filed in federal court seeking to represent the same class and seeking substantially similar damages—and each of those cases alleges that the amount in controversy exceeds $5 million. (*See supra* ¶¶ 37, 38.)

---

[3] Equifax, available at https://www.equifax.com/, last visited on Jan. 2, 2024; LifeLock by Norton, available at https://lifelock.norton.com/, last visited on Jan. 2, 2024; and Experian, available at https://www.experian.com/protection/identity-theft-and-credit-protection/, last visited on Jan. 2, 2024.

54. Accordingly, the CAFA amount-in-controversy threshold is satisfied before ever taking into account other forms of compensatory damages (including statutory treble damages), punitive damages, injunctive or declaratory relief, or attorneys' fees, which would add even more to the total amount in controversy.

## IV.     RESERVATION OF RIGHTS AND DENIAL OF LIABILITY

55. Nothing in this Notice is intended or should be construed as an express or implied admission by Defendant of any fact alleged by Plaintiffs, of the validity or merit of any of Plaintiffs' claims and allegations, or as a limitation of any of Defendant's rights, claims, remedies, and defenses in connection with this action.

## V.     CONCLUSION

56. Defendant removes the State Court Action to the United States District Court for the Western District of Washington based on original jurisdiction under 28 U.S.C. § 1332(d).

57. Promptly after filing this Notice of Removal, Defendant will file a copy of it with the clerk of the state court in which this action is pending and will give written notice to counsel for Plaintiffs, as required by 28 U.S.C. § 1446(d).

58. This Notice of Removal is submitted without waiver of any procedural or substantive defense that may be available to Defendant and without admitting any of the allegations contained within the Complaint.

Dated: January 8, 2024                Respectfully submitted,

**BAKER & HOSTETLER LLP**

*/s/ Paul Bruene*
Paul Bruene, WSBA # 52727
999 Third Avenue, Suite 3900
Seattle, WA 98104-4076
T: (206) 332-1380
F: (206) 624-7317
E: pbruene@bakerlaw.com

***Attorney for Defendant***
***Fred Hutchinson Cancer Center***

4870-1973-5706.2

# CERTIFICATE OF SERVICE

I hereby certify that on January 8, 2024, I electronically filed the foregoing NOTICE OF REMOVAL with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel for plaintiffs. I further certify that I emailed the filings to the below counsel on January 8, 2024.

>Timothy W. Emery
>Patrick B. Reddy
>EMERY REDDY, PLLC
>600 Stewart Street, Suite 1100
>Seattle, WA 98101
>T: (206) 442-9106
>F: (206) 441-9711
>emeryt@emeryreddy.com
>reddyp@emeryreddy.com
>
>M. Anderson Berry
>Gregory Haroutunian
>Brandon P. Jack
>CLAYEO C. ARNOLD, PC
>865 Howe Avenue
>Sacramento, CA 95825
>T: 916.239.4778
>F: 916.924.1829
>aberry@justice4you.com
>gharoutunian@justice4you.com
>bjack@justice4you.com

  */s/ Paul Bruene*
  Paul Bruene

4870-1973-5706.2